**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

ELECTRONICALLY
FILED
Nov 08 2023
U.S. DISTRICT COURT
Northern District of WV

**WHEELING DIVISION**

**EQT PRODUCTION COMPANY,**
**A Pennsylvania Corporation,**

**Plaintiff,**

**v.**                                                                   Civil Action No. **5:23-CV-332 (Bailey)** _____

**AIG SPECIALTY INSURANCE COMPANY,**
**a foreign corporation, and COMMERCE AND**
**INDUSTRY INSURANCE COMPANY, a**
**foreign corporation,**

**Defendants.**

**COMPLAINT**

Plaintiff EQT Production Company ("EQT") states the following for its Complaint against

Defendant AIG Specialty Insurance Company ("ASIC") and Defendant Commerce and Industry

Insurance Company ("CIIC"), both of which are part of American International Group, Inc. (i.e.,

AIG):

**Preliminary Statement**

1.      EQT brings this Complaint to seek a declaration from the Court that ASIC and

CIIC each owe a duty to indemnify and a duty to defend EQT.  In addition, because ASIC and

CIIC have each refused to agree to indemnify and defend EQT,  this Complaint seeks damages

incurred by EQT caused by those refusals.

**The Parties**

2.      EQT is a Pennsylvania corporation with a principle place of business in Pittsburgh,

Pennsylvania.  EQT is authorized to conduct business in West Virginia, it actually conducts

business in areas within the Northern District of West Virginia, and the underlying accident and

civil actions out of which the claims in this civil action arise took place in the Northern District of West Virginia.

3.     ASIC is an Illinois corporation with a principal place of business at 500 West Madison Street, Suite 3000, Chicago, Illinois 60661.  ASIC is authorized to conduct business in West Virginia, and it actually conducts business in West Virginia.

4.     CIIC is a New York corporation with a principal place of business at 1271 Avenue of the Americas, 35th Floor, New York, New York 10020-1304.  CIIC is authorized to conduct business in West Virginia, and it actually conducts business in West Virginia.

## Jurisdiction

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity of citizenship between EQT and ASIC.

6.     In addition, under the Declaratory Judgment Act, 28 U.S.C. §2201, this Court has the power to declare the rights and legal relations of EQT, ASIC, and CIIC with respect to the rights and duties that ASIC and CIIC under certain insurance contracts and coverages reflected on a Certificate of Liability Insurance ("Certificate").

7.     This Court also has personal jurisdiction over ASIC and CIIC as, upon information and belief, both transact business in West Virginia and issued contracts to insure persons, property and/or risks located within West Virginia.

## Factual Background

8.      This action centers on a dispute whereby EQT requested that ASIC and CIIC provide both indemnification and a defense for (1) claims asserted by James Stevenson against EQT and other defendants in Civil Action No. 22-C-5 pending in the Circuit Court of Ohio County,

West Virginia (the "Stevenson Complaint"); (2) claims asserted by Nathan A. Ludwig against EQT and other defendants in Civil Action No. 23-C-9 pending in the Circuit Court of Ohio County, West Virginia (the "Ludwig Complaint"); and (3) claims asserted by Scottsdale Insurance Company ("Scottsdale") against EQT and others in Civil Action No. 22-C-174, filed in the Circuit Court of Ohio County, West Virginia (the "Scottsdale Complaint").

**Allegations in the Stevenson Complaint.**

9.      Mr. Stevenson filed his initial Complaint on January 11, 2022, and then filed an Amended Complaint on April 11, 2022, in which he alleges personal injuries from an explosion and fire at a facility owned and operated by Brennon Rail Services, LLC ("Brennon") on or about February 1, 2021.  See Exhibit 1 (Complaint) and Exhibit 2 (Amended Complaint).

10.     Specifically, Mr. Stevenson alleges that EQT contracted with Energy Transportation Company, LLC ("Energy Transportation"), for the transport and disposal of wastewater associated with EQT's operations.  Amended Complaint at ¶16.

11.     On or about February 1, 2021, Energy Transport picked up a load of wastewater from EQT in a tanker truck and delivered it to a facility near Triadelphia, West Virginia, owned and/or operated by Brennon.  Amended Complaint at ¶¶16-18.

12.     After arriving at the facility, an Energy Transportation employee began to drain the tanker truck of the wastewater.  Amended Complaint at ¶19.

13.     While the tanker truck drained, the Energy Transportation driver walked away, at which point a propane-fueled forced air portable heater located within the Brennon facility allegedly ignited airborne natural gas condensate from the wastewater and caused an explosion and fire.  Amended Complaint at ¶¶19-21.

14.     Mr. Stevenson alleged that he, and unnamed others, sustained personal injuries and

that the facility was destroyed.  Amended Complaint at ¶22-23.

15.    Mr. Stevenson alleges that EQT negligently hired, retained, and/or supervised Energy Transportation.  Amended Complaint at Count III (pp. 8-9).

16.    He also alleges that EQT negligently caused the injuries by "knowingly directing [Energy Transportation] to deliver a dangerous load of wastewater to the subject worksite . . . ." Amended Complaint at 9.

**Allegations in the Ludwig Complaint.**

17.    Mr. Ludwig filed his Complaint on or about January 26, 2022, in which he alleges personal injuries from the same explosion and fire at the facility owned and operated by Brennon on or about February 1, 2021.  See Exhibit 3 (Complaint).

18.    Specifically, Mr. Ludwig made virtually the same allegations, and asserted the same causes of action, as those contained in the Stevenson Complaint.

**Allegations in the Scottsdale Complaint.**

19.    Scottsdale filed its Complaint on October 21, 2022, alleging that it provided an unspecified "policy of insurance" to Brennon, pursuant to which it paid to Brennon $2,602,275.70 for "damages" to Brennon's facility as a result of the explosion and fire on February 1, 2021.  See Exhibit 4 (Scottsdale Complaint) at ¶¶ 7-9.

20.    Scottsdale also alleges that it incurred expenses of $76,355.43 and that Brennon paid a deductible of $6,000 for which Scottsdale seeks reimbursement.  Scottsdale Complaint at ¶¶ 10 and 11.

21.    Scottsdale's claims against EQT, therefore, are in the nature of a subrogation claim.

**The EQT - Brennon Rail Services Master Services Agreement.**

22.    EQT entered into a Master Services Agreement with Brennon dated January 15,

2021 ("Agreement"), for "the performance of work, provision of services and/or the rental, supply, or sale of goods, materials or equipment by [Brennon] to [EQT] . . . ."  Agreement at  Section 1.[1]

23.     Per Section 14 (Indemnification) of the Agreement, Brennon agreed to "release, defend, indemnify and hold Company Group harmless from and against any and all Claims arising out of bodily injury to Persons in the Contractor Group, including, but not limited to, sickness or death, or loss or destruction of property or interests in property of the Contractor Group, in any manner caused by, directly or indirectly resulting from, incident to, connected with or arising out of, performance of the Work."  Agreement at Section 14(a).

24.     The "Company Group" is defined in the Agreement as "Company, and its Affiliates . . . ."  Agreement at Section 1(d).

25.     EQT is defined as the "Company" in the Agreement.  Agreement at 1.

26.     Brennon is defined as the "Contractor" in the Agreement.  Agreement at 1.

27.     Mr. Stevenson and Mr. Ludwig were employed by Brennon at the time of the incident on or about February 1, 2021, and hence is included in the term "Contractor Group" as defined in the Agreement.  Agreement at Section 1(f).

28.     Section 15 of the Agreement required Brennon to obtain insurance to cover its obligations under the Agreement.

29.     The Master Services Agreement Insurance Rider identifies the insurance requirements for policies obtained by Brennon, which included Commercial General Liability Insurance coverage, Commercial Automobile coverage, and Umbrella/Excess Liability Insurance coverage.  Agreement at 24-28 (Master Services Agreement Insurance Rider).

---

[1] The Agreement represents a confidential document that has previously been provided with a "Confidential" stamp in the underlying Stevenson litigation.  At the appropriate time, a copy of the Agreement will be filed with the Court with an appropriate Motion to File Under Seal.

**The Certificate of Insurance and Coverage for EQT.**

30.     The Agreement required that Brennon add EQT as an additional insured on its Commercial General Liability Insurance coverage, Commercial Automobile, and Umbrella/Excess Liability Insurance coverage, among other coverages.  Agreement at Insurance Rider, Section B.1.

31.     EQT was provided a Certificate of Insurance, as required by the Agreement, dated January 13, 2021, that reflected Brennon's insurance coverages in effect at the time of the incident on or about February 1, 2021, including coverages for Commercial General Liability Insurance, Commercial Automobile, and Umbrella/Excess Liability Insurance ("COI").  See Exhibit 5 (Certificate of Insurance).

32.     In addition, the COI states that "EQT Corporation, its subsidiaries and affiliates are Additional Insured as per written contract."  EQT is an affiliate of EQT Corporation; hence, EQT is an additional insured under the policies identified in the COI "as per [the] written" Agreement.

33.     Specifically, as to ASIC, EQT was added as an Additional Insured on the Commercial General Liability insurance coverage, Policy No. 38802026 ("CGL Policy"), issued by ASIC; hence, EQT is a first party insured under the CGL Policy.

34.     Specifically, as to CIIC, EQT was added as an Additional Insured on the Commercial Automobile insurance coverage, Policy No. 1342226 ("Auto Policy"), issued by CIIC; hence, EQT is a first party insured under the Auto Policy.

35.     Specifically, as to ASIC, EQT was added as an Additional Insured on the Excess Liability coverage issued by ASIC, Policy No. 38802027 ("Excess Policy"); hence, EQT is a first party insured under the Excess Policy.

**EQT's efforts to require ASIC to fulfill its obligations to indemnify and defend EQT.**

36.     For unknown reasons, ASIC has virtually ignored EQT's efforts to obtain confirmation of indemnification and a defense for the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint prior to being forced to file this Complaint.

37.     Specifically, EQT first submitted a general demand for a defense and indemnification on February 10, 2021, shortly after the incident at Brennon's facility and while an initial investigation into the incident was ongoing.  Exhibit 6 (Letter, Stefanie Burt, Esq., to ASIC dated 2-10-20).[2]

38.     Mark Senterfeit of ASIC responded on May 12, 2021, and denied coverage because "no claims for damages have yet been formally made against EQT, and no lawsuit has been filed." Exhibit 7 (Letter, Mark Senterfeit to Stefanie Burt, dated May 12, 2021).  Mr. Senterfeit's letter also referenced a passage from the CGL Policy concerning "an additional insured," but it does not specifically indicate whether ASIC denying coverage to EQT on the basis that it was not an "additional insured" under the CGL Policy or the Excess Policy.

39.     On January 11, 2022, Mr. Stevenson filed his initial Complaint.

40.     On April 11, 2022, Mr. Stevenson filed his Amended Complaint.

41.     On June 23, 2022, EQT sent the Amended Complaint to ASIC and again demanded that ASIC provide a defense and indemnification to EQT.  Exhibit 8 (Letter, Mychal S. Schulz to Mark Senterfeit dated June 23, 2022).  EQT also requested, as a first party insured, a complete and certified copy of the CGL Policy and the Excess Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than July 8, 2022.

42.     On July 22, 2022, Kristen Carlson of ASIC requested an extension of time to respond because Mr. Senterfeit, who has previously communicated ASIC's denial of coverage in

---

[2] This letter was erroneously dated 2-10-20, but it was sent on 2-10-21.

May 2012, was unexpectedly on leave because of a medical condition.  On that same date, EQT, by counsel, provided an extension to August 22, 2022.  Exhibit 9 (Email string dated July 22 and July 25, 2022, between Kristen Carlson and Mychal S. Schulz).

43.     Three days later, on July 28, Tom McCarter of ASIC sent an email to EQT's counsel, stated that he had taken over responsibility for EQT's demand for a defense and indemnification because of Mr. Senterfeit's unfortunate passing, and confirmed that EQT had provided an extension of time to respond.  EQT's counsel responded by confirming an extension to August 18, 2022.  Exhibit 10 (Email string dated July 28, 2022, between Tom McCarter and Mychal S. Schulz).

44.     On October 2, 2023, ASIC's coverage counsel emailed EQT's coverage counsel to state, "I understand that you want to have a discussion about coverage issues in the [Stevenson] matter as they relate to your client."  EQT's coverage counsel responded, the following day, "I'm happy to have a call, but I'm also looking for a written coverage decision on EQT's demand for a defense and indemnification, which was required over a year ago per West Virginia law."  See Exhibit 11 (Email string dated October 3-4, 2023, between Mychal S. Schulz and Daniel Lynn).

45.     Thereafter, on October 5, 2023, EQT's coverage counsel emailed to coverage counsel for ASIC and CIIC a copy of all correspondence between EQT and ASIC, and between EQT and CIIC concerning EQT's demand for a defense and indemnification.  See Exhibit 12 (Emails dated October 5, 2023, Mychal S. Schulz to Daniel Lynn).

46.     As of the date of the filing of this Complaint, EQT has not heard anything further from ASIC, which has failed to respond to EQT's demand for a defense and indemnification for the Stevenson Complaint made on June 23, 2022.  In addition, ASIC has failed to provide a copy of either the CGL Policy or the Excess Policy to EQT, its first party insured.

47.     Mr. Ludwig filed his Complaint on or about January 6, 2023.

48.     On February 8, 2023, EQT sent the Ludwig Complaint to ASIC and demanded that provide a defense and indemnification to EQT.  Exhibit 13 (Letter, Mychal S. Schulz to ASIC dated February 8, 2023).  EQT also requested, again, as a first party insured, a complete and certified copy of the CGL Policy and the Excess Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than February 23, 2023.

49.     As of the date of the filing of this Complaint, ASIC has failed to respond to EQT's demand for a defense and indemnification for the Ludwig Complaint.  In addition, ASIC has failed to provide a copy of the CGL Policy or the Excess Policy to EQT, the first party insured.

50.     Scottsdale filed its Complaint on October 21, 2022.

51.     On December 19, 2022, EQT's counsel sent a letter to ASIC demanding that ASIC provide a defense and indemnification for the claims asserted against EQT in the Scottsdale Complaint.  See Exhibit 14 (Letter, Mychal S. Schulz to Tom McCarter dated December 19, 2022).  EQT also requested -- again, as a first party insured -- a complete and certified copy of the CGL Policy and the Excess Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than December 31, 2022.

52.     Since that letter on December 16, 2022, EQT has not heard anything from ASIC, which has failed to respond to EQT's demand for a defense and indemnification for the Scottsdale Complaint.  In addition, ASIC has failed to provide a copy of either the CGL Policy or the Excess Policy to EQT, its first party insured.

53.     In short, ASIC has completely failed to provide any response to EQT's demand for a defense and for indemnification under the CGL Policy and Excess Policy for the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint, and it has refused to provide

copies of those policies to EQT.

54.     As a result, EQT is forced to bring this Complaint.

**EQT's efforts to require CIIC to fulfill its obligations to indemnify and defend EQT.**

55.     Likewise, CIIC has failed to respond to EQT's efforts to obtain confirmation of indemnification and a defense for the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint prior to being forced to file this Complaint.

56.     Specifically, as noted above, EQT first submitted a general demand for a defense and indemnification on February 20, 2021, shortly after the incident at Brennon's facility and while an initial investigation into the incident was ongoing.  Exhibit 6 (Letter, Stefanie Burt, Esq., to CIIC dated 2-20-21).

57.     Mark Senterfeit of ASIC responded on May 12, 2021, and denied coverage because "no claims for damages have yet been formally made against EQT, and no lawsuit has been filed." Exhibit 7 (Letter, Mark Senterfeit to Stefanie Burt, dated May 12, 2021).

58.     On January 11, 2022, Mr. Stevenson filed his initial Complaint.

59.     On April 11, 2022, Mr. Stevenson filed his Amended Complaint.

60.     On June 3, 2022, EQT sent the Amended Complaint to CIIC and again demanded that CIIC provide a defense and indemnification to EQT.  Exhibit 15 (Letter, Mychal S. Schulz to CIIC dated June 3, 2022).  EQT also requested, as a first party insured, a complete and certified copy of the CGL Policy and the Excess Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than June 19, 2022, which was later extended by agreement to July 19, 2022.

61.     On July 22, 2022, Kristen Carlson of CIIC requested an extension of time to respond, which EQT, by counsel, provided that same day.  As a result, the response of CIIC and

ASIC was due no later than August 22, 2022. Exhibit 9 (Email string dated July 22 and July 25, 2022, between Kristen Carlson and Mychal S. Schulz).

62.     Three days later, on July 28, Tom McCarter of CIIC sent an email to EQT's counsel, stated that he had taken over responsibility for EQT's demand for a defense and indemnification because of Mr. Senterfeit's unfortunate passing, and confirmed that EQT had provided an extension of time to respond. EQT's counsel responded by confirming an extension to August 18, 2022. Exhibit 10 (Email string dated July 28, 2022, between Tom McCarter and Mychal S. Schulz).

63.     On October 25, 2022, Edward J. Pickering of CIIC denied EQT's demand for a defense and indemnification on the sole basis that "EQT Corporation is not an 'insured' under the [Commercial Auto] Policy. EQT is not listed as named insured on the Policy, and is not an insured under the Who Is An Insured provisions of the Policy. There is no coverage under this policy for defendant EQT for this lawsuit for this reason." See Exhibit 16 (Letter, Edward F. Pickering to Mychal S. Schulz dated October 25, 2022). Notably, while Mr. Pickering's letter informed EQT to "[k]indly refer to the policy for its complete terms and conditions[,]" Neither Mr. Pickering nor anyone else from CIIC has ever provided a full and complete copy of the Commercial Automobile Policy to EQT.

64.     EQT sent a letter to CIIC on November 7, 2022, asking for reconsideration because (1) EQT Production Company – and not EQT Corporation – was the proper party to the Stevenson Complaint, as reflected in a court order that made the change; (2) the MSA required Brennon to obtain insurance coverages for both EQT Production Company and EQT Corporation; and (3) the COI reflects coverage for "EQT Corporation, its subsidiaries and affiliates" as "Additional Insureds" under the listed insurance policies. See Exhibit 17 (Letter, Mychal S. Schulz to Edward

F. Pickering dated November 7, 2022).

65.     To date, CIIC has not responded to the letter sent by EQT on November 7, 2022.

66.     On October 2, 2023, CIIC's coverage counsel emailed EQT's coverage counsel to state, "I understand that you want to have a discussion about coverage issues in the [Stevenson] matter as they relate to your client."  EQT's coverage counsel responded, the following day, "I'm happy to have a call, but I'm also looking for a written coverage decision on EQT's demand for a defense and indemnification, which was required over a year ago per West Virginia law."  See Exhibit 11 (Email string dated October 3-4, 2023, between Mychal S. Schulz and Daniel Lynn).

67.     Thereafter, on October 5, 2023, EQT's coverage counsel emailed to coverage counsel for ASIC and CIIC a copy of all correspondence between EQT and ASIC, and between EQT and CIIC concerning EQT's demand for a defense and indemnification.  See Exhibit 12 (Emails dated October 5, 2023, Mychal S. Schulz to Daniel Lynn).

68.     As of the date of the filing of this Complaint, EQT has not heard anything further from CIIC, which has failed to respond to EQT's demand for a defense and indemnification for the Stevenson Complaint made on June 3, 2022.  In addition, ASIC has failed to provide a copy of the Commercial Automobile Policy to EQT, its first party insured.

69.     Mr. Ludwig filed his Complaint on or about January 6, 2023.

70.     On February 8, 2023, EQT sent the Ludwig Complaint to CIIC and demanded that CICC provide a defense and indemnification to EQT.  Exhibit 18 (Letter, Mychal S. Schulz to CIIC dated February 8, 2023).  EQT also requested, again, as a first party insured, a complete and certified copy of the Commercial Automobile Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than February 23, 2023.

71.     As of the date of the filing of this Complaint, CIIC has failed to respond to EQT's

demand for a defense and indemnification for the Ludwig Complaint.  In addition, CIIC has failed to provide a copy of the Commercial Automobile Policy to EQT, the first party insured.

72.     Scottsdale filed its Complaint on October 21, 2022.

73.     On December 19, 2022, EQT's counsel sent a letter to ASIC demanding that ASIC provide a defense and indemnification for the claims asserted against EQT in the Scottsdale Complaint.  See Exhibit 14 (Letter, Mychal S. Schulz to Tom McCarter dated December 19, 2022). EQT also requested -- again, as a first party insured -- a complete and certified copy of the Commercial Automobile Policy and the Excess Policy.  Per W. Va. C.R. §114-14-5, a response to that demand was due no later than December 31, 2022.

74.     Since that letter on December 19, 2022, EQT has not heard anything from CIIC, which has failed to respond to EQT's demand for a defense and indemnification for the Scottsdale Complaint.  In addition, CIIC has failed to provide a copy of the Commercial Automobile Policy to EQT, its first party insured.

75.     In short, CIIC failed to respond to EQT's demand in November 2022 that CIIC reverse it incorrect coverage conclusion about EQT Production was not provided coverage under the Automobile Policy, and CIIC has failed to provide any response to EQT's demand for a defense and for indemnification under the Commercial Automobile Policy for the Ludwig Complaint and the Scottsdale Complaint, and it has refused to provide a copy of the Commercial Automobile Policy to EQT.

76.     As a result, EQT is forced to bring this Complaint.

## COUNT I - REQUEST FOR DECLARATORY JUDGMENT

77.     Paragraphs 1 through 76 of this Complaint are incorporated here by reference and are alleged as if fully set forth herein.

78.     A justiciable controversy exists between the parties to this action with respect to the scope, meaning, and application of the policies of insurance issued by ASIC and CIIC and whether ASIC and CIIC owe a duty of defense and a duty of indemnification to EQT.

79.     The legal rights and obligations of the parties to this civil action are dependent upon this Court's declaration of the scope, meaning and application of the policies issued by ASIC and CIIC, and to the extent that issues of fact impact such scope, meaning and application of the CGL Policy, the Commercial Automobile Policy, and the Excess Policy presented in this civil action, a jury in the Northern District of West Virginia must make such findings of fact.

80.     EQT asks that the Court declare that, under the terms of the CGL Policy and the Excess Policy, ASIC is legally obligated to provide a defense to EQT in reference to the claims made against EQT in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

81.     EQT also asks the Court to declare that, under the terms of the CGL Policy and the Excess Policy, ASIC is legally obligated to indemnify EQT in reference to the claims made against EQT in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

82.     EQT further asks that the Court declare that, under the terms of the Commercial Automobile Policy, CIIC is legally obligated to provide a defense to EQT in reference to the claims made against EQT in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

83.     EQT also asks the Court to declare that, under the terms of the Commercial Automobile Policy, CIIC is legally obligated to indemnify EQT in reference to the claims made against EQT in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

84.     EQT further asks the Court to declare that, pursuant to the legal obligation of ASIC

and CIIC to defend and indemnify EQT, ASIC and CIIC are each liable to pay EQT all costs and expenses, including attorneys' fees and expenses, incurred by EQT to defend itself against the assertions in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint and in seeking to enforce its right to have ASIC and CIIC defend and indemnify it.

## COUNT II - BREACH OF CONTRACT

85.     Paragraphs 1 through 86 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

86.     The CGL Policy and Excess Policy issued by ASIC and the Commercial Automobile Policy issued by CICC represent written contracts, and as an additional insured under each policy, EQT is entitled to receive the benefits provided by those contracts, including the obligation of ASIC and CIIC to defend and indemnify it in defense of the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

87.     ASIC and CIIC have each negligently, willfully, wantonly, recklessly, and maliciously breached these contractual duties by failing to defend or indemnify EQT in relation to the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

88.     As a result, EQT has suffered and will continue to suffer damages, including monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT III:  VIOLATIONS OF UNFAIR TRADE PRACTICES ACT

89.     Paragraphs 1 through 88 of this Complaint are incorporated here by reference and are alleged as if fully set forth herein.

90.     Under W. Va. Code § 33-11-4(1)(a), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to make a misrepresentation concerning the benefits, advantages, conditions or terms of any insurance

policy.

91.    Under W. Va. Code § 33-11-4(9)(a), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

92.    Under W. Va. Code § 33-11-4(9)(b), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to acknowledge and act promptly upon communications with respect to claims arising under CGL Policy and Excess Policy.

93.    Under W. Va. Code § 33-11-4(9)(c), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to adopt and implement reasonable standards for the prompt investigation of claims arising under CGL Policy and Excess Policy.

94.    Under W. Va. Code § 33-11-4(9)(d), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to refuse to pay claims without conducting a reasonable investigation based upon all available information.

95.    Under W. Va. Code § 33-11-4(9)(e), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to affirm or deny coverage of claims within a reasonable time.

96.    Under W. Va. Code § 33-11-4(9)(g), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to compel insureds to institute litigation to recover amounts due under an insurance policy.

97.    Under W. Va. Code § 33-11-4(9)(n), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to promptly

16

provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

98.     The conduct of ASIC constitutes unfair or deceptive acts or practices in violation of the provisions of the West Virginia Unfair Trade Practices Act, W. Va. Code 33-11-4, as detailed in the paragraphs above.

99.     As a result of ASIC's numerous misrepresentations and omissions and unfair or deceptive acts or practices, EQT has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

100.    As a result of ASIC's numerous misrepresentations and omissions and unfair or deceptive acts or practices, EQT has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT IV:  NEGLIGENT MISREPRESENTATION

101.    Paragraphs 1 through 100 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

102.    The COI clearly and unambiguously states that "EQT Corporation, its subsidiaries and affiliates are Additional Insured as per written contract."

103.    As ASIC and CIIC have not agreed to defend and/or indemnify EQT against the claims asserted in the Stevenson Complaint, the Ludwig Complaint, or the Scottsdale Complaint, the statement in the COI that EQT is an additional insured represents a material misrepresentation as to the benefits available to EQT as an additional insured under the CGL Policy, the Commercial Automobile Policy, and Excess Policy as identified on the COI.

17

104.     EQT relied upon the misrepresentation in the COI that it was an additional ensured under the CGL Policy and the Excess Policy provided by ASIC and the Commercial Automotive Policy issued by CIIC.

105.     As a result of ASIC's and CIIC's material misrepresentations, EQT has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

### COUNT V - FRAUDULENT MISREPRESENTATION

106.     Paragraphs 1 through 105 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

107.     ASIC and/or CIIC issued or caused the COI to be issued.

108.     The COI clearly and unambiguously states that "EQT Corporation, its subsidiaries and affiliates are Additional Insured as per written contract."

109.     As ASIC has not agreed to defend and indemnify EQT against the claims asserted in the Stevenson Complaint, the Ludwig Compliant, or in the Scottsdale Complaint, the statement in the COI that EQT is an additional insured is a material misrepresentation as to the benefits available to EQT as an additional insured under the CGL Policy and Excess Policy identified on the COI.

110.     As CIIC has not agreed to defend and indemnify EQT against the claims asserted in the Stevenson Complaint, the Ludwig Compliant, or in the Scottsdale Complaint, the statement in the COI that EQT is an additional insured is a material misrepresentation as to the benefits available to EQT as an additional insured under the Commercial Automobile Policy identified on the COI.

111.     When made, ASIC and CIIC knew the representations were false or knew they were

made recklessly without knowledge of whether they were true.

112.    EQT relied upon the misrepresentation in the COI that it was an additional named ensured under the CGL Policy, the Commercial Automobile Policy, and the Excess Policy provided by ASIC and CIIC.

113.    As a result of ASIC's and CIIC's material fraudulent  misrepresentations, EQT has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT VI: *HAYSEEDS* CLAIM

114.    Paragraphs 1 through 113 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

115.    ASIC breached the CGL Policy, Excess Policy, and COI as detailed in this Complaint by failing to defend and indemnify EQT for the claims made in the Stevenson Complaint, the Ludwig Complaint, and in the Scottsdale Complaint.

116.    CIIC breached the Commercial Automotive Policy and COI as detailed in this Complaint by failing to defend and indemnify EQT for the claims made in the Stevenson Complaint, the Ludwig Complaint, and in the Scottsdale Complaint.

117.    EQT has had, and continues to have, a dispute with ASIC concerning coverage under the CGL Policy and Excess Policy identified in the COI and the benefits available to EQT under the terms of those policies and the COI.

118.    EQT has had, and continues to have, a dispute with CIIC concerning coverage under the Commercial Automobile Policy identified in the COI and the benefits available to EQT under the terms of that policy and the COI.

119.    EQT anticipates that it will substantially prevail with regard to the disputes with

ASIC and CIIC concerning coverages and benefits under the CGL Policy, Commercial Automobile Policy, Excess Policy, and COI, including that ASIC and CIIC owe a duty to EQT to defend against and a duty to indemnify for the claims in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint.

120.    EQT has had to engage counsel to defend itself against the claims asserted in the Stevenson Complaint, the Ludwig Complaint, and the Scottsdale Complaint and to secure the coverage and benefits owed to it by ASIC and CIIC, including litigation to secure that coverage and those benefits.

121.    For all disputes in which EQT substantially prevails, including those claims against ASIC concerning its failure to meet its obligations under the CGL Policy, the Excess Policy, and/or the COI, and those claims against CIIC concerning its failure to meet its obligations under the Commercial Automobile Policy and/or the COI, EQT is entitled to recover out-of-pocket expenses, attorneys' fees and expenses incurred, and damages for annoyance and inconvenience as permitted by Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986), and its progeny.

122.    The actions and omissions of ASIC and CIIC as described in this Complaint were willful, wanton, and reckless, undertaken with actual malice, in bad faith, and in total disregard of its duties to EQT, its first party insured.

123.  ASIC and/or CIIC knew that EQT's claims for coverage were proper, but it willfully, maliciously, and intentionally failed to adequately investigate EQT's request for coverage and willfully, maliciously, and intentionally denied and/or failed to respond to the claims for coverage. All of the acts of ASIC and CIIC were egregious and conducted with actual malice and in bad faith so as to render ASIC and CIIC liable for punitive damages.

**WHEREFORE**, EQT prays that the Court:

A.      Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. §2201, and declare that ASIC owes EQT a duty to defend and a duty of indemnification for all claims asserted against EQT in the Stevenson Complaint, the Ludwig Compliant, and in the Scottsdale Complaint;

B.      Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. §2201, and declare that CIIC owes EQT a duty to defend and a duty of indemnification for all claims asserted against EQT in the Stevenson Complaint, the Ludwig Compliant, and in the Scottsdale Complaint;

C.      Award damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses, and punitive damages; and

D.      Award EQT such other and further relief as this Court deems just and proper.

To the extent that material issues of fact exist for any of the causes of action contained in this Complaint, EQT asks for a jury trial.

**EQT PRODUCTION COMPANY**

**By Counsel**

*/s/ Mychal S. Schulz*
Mychal S. Schulz (WVSB No. 6092)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, West Virginia 25301
(681) 205-8888
(681) 205-8814 (fax)
mschulz@babstcalland.com
*Counsel for EQT Production Company.*